**Affirmed and Memorandum Opinion filed October 7, 2025.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00098-CV

### ARTHUR ARRIT CHAVASON, M.D., Appellant

### V.

### THE TEXAS MEDICAL BOARD, Appellee

**On Appeal from the 200th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-22-003661**

## MEMORANDUM OPINION

Appellant Dr. Arthur Chavason appeals the district court's judgment affirming the Texas Medical Board's order revoking Chavason's license to practice medicine in Texas. The Board found that Chavason committed multiple violations of the Medical Practice Act (the Act) and the Board's administrative rules (Rules). *See* Tex. Occ. Code §§ 164.051(a)(1), (6)–(7), 164.052(a); 22 Tex. Admin. Code §§ 190.8(1)(C), (M); 190.8(2)(E)–(G), (K), (P); 190.8(4).[1]  Specifically, the Board

---

[1] The Rules applicable to this case were repealed in January 2025.  50 Tex. Reg. 419

concluded Chavason committed multiple sexual boundary violations with female psychiatric patients over the span of eight years, resulting in harm to the patients and increased potential harm to the public. Because substantial evidence supports the Board's order, we affirm.

## BACKGROUND

Chavason held a license to practice medicine, which the Board issued in 2007. He worked at a healthcare entity called the Holiner Group and had hospital privileges at Medical City Green Oaks (Green Oaks Hospital).

In 2011, a patient (referred to as Patient Eleven) reported Chavason to the Board for unprofessional sexual behavior. The Board investigated the complaint, and Chavason attended an informal settlement conference with his attorney. No agreement to settle was reached, and the Board eventually dismissed the complaint.

In 2018, Chavason was reported to the Board for unprofessional sexual behavior with three different patients (Patients One, Two, and Eight) and for disciplinary action by his peers. Another patient (Patient Nine) made complaints to Chavason's employers that Chavason inappropriately hugged her after meetings, inappropriately commented on her appearance, and offered to meet her outside of the hospital. The Holiner Group terminated Chavason after receiving Patient Nine's complaint and reported it to the Board. Chavason relinquished his hospital privileges from Green Oaks Hospital while under investigation for Patient Nine's complaint. The Board's staff (Staff) investigated the complaint regarding Patients One, Two, and Eight, and the disciplinary action by peers. Staff held an informal settlement conference, which Chavason attended with his lawyer, but Staff and Chavason were not able to negotiate an agreed order or other satisfactory

_____

(2025). All cites to Title 22 of the Texas Administrative Code in this opinion are to the Rules that were in effect at the time of Chavason's contested-case hearing in 2022.

2

resolution.

Staff then filed a formal complaint with the State Office of Administrative Hearings (SOAH) against Chavason alleging that he violated the Act and the Board's Rules by (1) failing to maintain professional boundaries with patients and employees, leading to discipline by his peers for misconduct; (2) engaging in a pattern of sexual misconduct and abuse designed to exploit patients' sexual boundaries, which adversely impacted patient care; and (3) posing inappropriate questions of a sexual nature, commenting on patients' physical appearance and sexual desirability, fondling, groping and in some instances, engaging in sexual contact with patients. The complaint's factual allegations involved multiple patients (Patients One, Two, Four, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve), two disciplinary actions by peers, and a discussion of aggravating factors.

A contested-case hearing, lasting nine days, was held before two Administrative Law Judges (ALJs). Staff presented live testimony from Patient Seven, Dr. Joel Holiner, and a forensic psychiatrist who provided expert testimony. Numerous exhibits were admitted, including patient medical records, employee files and records, videos of interactions between Chavason and certain patients, and deposition testimony of several witnesses including two employees and Patients One, Two, Four, Six, Seven, Nine, Ten, and Eleven. Chavason testified on his own behalf and also presented expert testimony and live testimony from Patient One.

After the record closed, the ALJs issued a proposal for decision that included 96 findings of fact and 11 conclusions of law. The ALJs found that over a span of eight years, Chavason committed numerous sexual boundary violations with nine patients, including inappropriately hugging patients, commenting on patients' physical or sexual desirability, asking about patients' sexual practices,

3

and engaging in sexual contact with Patient Eleven. The ALJs found aggravating factors warranted more severe or restrictive action by the Board because (1) Chavason's conduct caused harm to the patients, (2) his conduct resulted in increased potential harm to the public, and (3) his violations continued despite attending remedial courses and workshops, receiving warnings, and being subject to disciplinary actions by his employers. *See* 22 Tex. Admin. Code § 190.15(a). Based on these findings, the ALJs concluded Chavason violated the Act and the Board's Rules. *See* Tex. Occ. Code §§ 164.051(a)(1), (6)–(7), 164.052(a); 22 Tex. Admin. Code §§ 190.8(1)(C), (M); 190.8(2)(E)–(G), (K), (P); 190.8(4).

The Board adopted the ALJ's findings and conclusions, and ordered Chavason's license to practice medicine immediately revoked. Chavason timely filed a motion for rehearing, which the Board denied. Chavason then sought judicial review of the Board's order, which the district court affirmed. This appeal followed.

## STANDARD OF REVIEW

We review the Board's order revoking Chavason's license under the substantial evidence standard. Tex. Gov't Code § 2001.174. Under this standard, a court must reverse or remand a case for further administrative proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are, as relevant here, "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *Id.* § 2001.174(2)(E). In applying the substantial evidence standard, a court "may not substitute [its] judgment for the judgment of the state agency on the weight of the evidence." *Dyer v. Tex. Comm'n on Env't Quality*, 646 S.W.3d 498, 514 (Tex. 2022). In assessing whether the agency's decision is reasonably supported by substantial evidence, the issue is not

4

whether the agency's decision is correct, but only whether the record demonstrates some reasonable basis for the decision. *Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 544 (Tex. 2022) ("The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.") (quoting *Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)).

Neither we nor the trial court may substitute our judgment for the judgment of the state agency on the weight of the evidence. *Dyer*, 646 S.W.3d at 514. Instead, "[w]e must uphold the agency's ultimate decision if the evidence 'is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action.'" *Id.* (quoting *Charter Med.-Dall., Inc.*, 665 S.W.2d at 453). The agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise. *Maverick Cnty.*, 642 S.W.3d at 547.

## ANALYSIS

### I.    Substantial evidence supports the Board's order.

There is an overwhelming amount of evidence supporting the Board's order revoking Chavason's license to practice medicine based on numerous violations of the Act and the Rules. Relevant here, Section 164.052(a)(5) of the Act authorizes the Board to take disciplinary action against Chavason based on Chavason's "unprofessional or dishonorable conduct that is likely to deceive or defraud the public" or "injure the public," as further defined by the Rules: 190.8(2)(E), engaging in sexual contact with a patient; 190.8(2)(F), engaging in sexually inappropriate behavior or comments directed towards a patient; 190.8(2)(G), becoming financially or personally involved with a patient in an inappropriate manner; 190.8(2)(K), behaving in an abusive or assaultive manner towards a

5

patient or the patient's family or representatives that interferes with patient care or could be reasonably expected to adversely impact the quality of care rendered to a patient; and 190.8(2)(P), behaving in a disruptive manner toward licensees, hospital personnel, other medical personnel, patients, family members or others that interferes with patient care or could be reasonably expected to adversely impact the quality of care rendered to a patient.  Tex. Occ. Code § 164.052(a)(5); 22 Tex. Admin. Code §§ 190.8(2)(E)-(G), (K), (P).

Here, the evidence shows a long history and a pattern of sexual boundary violations by Chavason over a span of eight years.  Witness testimony and videos demonstrated inappropriate behavior by Chavason directed toward patients and coworkers.  For example:

- at least eight patients and one coworker testified Chavason commented on their physical or sexual desirability  (Patients One, Four, Six, Seven, Nine, Ten, Eleven, Twelve, Employee One);

- at least three patients testified Chavason asked about their sexual practices or their partner's sexual practices or abilities  (Patients One, Ten, and Eleven);

- at least one patient and one coworker testified they had sex with Chavason at the Holiner Group's office  (Patient Eleven and Employee One);

- at least five patients testified Chavason told them he wanted to have sex with them or what he would do with them if they had sex  (Patients One, Six, Seven, Ten, and Eleven);

- at least eight patients said Chavason would hug them during or at the end of appointments  (Patients One, Two, Six, Seven, Nine, Ten, Eleven, and Twelve), and there was evidence Chavason continued to hug at least four of these patients when he had been directed by his employer to stop  (Patients

6

Six, Nine, Ten, and Twelve); and

- there was evidence Chavason engaged in inappropriate and unprofessional sexual behavior with two subordinate employees, and that behavior created a disruptive work environment that negatively impacted patient care.

Also relevant here, Section 164.051(a)(7) of the Act authorizes the Board to take disciplinary action against Chavason based on disciplinary action taken by Chavason's peers, as further defined by Rule 190.8(4). *See* Tex. Occ. Code § 164.051(a)(7); 22 Tex. Admin. Code § 190.8(4) ("A voluntary relinquishment of privileges . . . with a hospital . . . while investigation or a disciplinary action is pending . . . constitutes disciplinary action that is appropriate and reasonably supported by evidence submitted to the board"). There is undisputed evidence that Chavason relinquished his privileges at Green Oaks Hospital while under investigation for Patient Nine's complaint.

An overwhelming amount of evidence also supports the Board's findings on aggravating factors. *See* 22 Tex. Admin. Code § 190.15(a). For example:

- at least seven patients testified Chavason's conduct or comments toward them made them feel unsafe, uncomfortable, or sexually harassed (Patients One, Four, Six, Seven, Nine, Ten and Eleven), *id.* § 190.15(a)(1);

- there was evidence Chavason caused severe harm to multiple patients, such as that Patient Eleven felt traumatized and sexually abused, Patient Nine left the outpatient program and has a phobia of older male professionals, and Patient Ten no longer wants to receive treatment from a psychiatrist, *id.* § 190.15(a)(2);

- Chavason's conduct involved one or more violations that involved more than one patient, *id.* § 190.15(a)(3); and

7

- Chavason's violations continued despite him attending multiple remedial courses and workshops, receiving warnings, and being subject to disciplinary actions by his peers, *id.* § 190.15(a)(5), (8), (9).

Accordingly, substantial evidence supports the Board's order.

## II. Chavason's other arguments on appeal.

Although substantial evidence supports the Board's revocation of Chavason's license, we will nevertheless address his remaining arguments.[2]

### A. Patient Eleven

First, Chavason challenges the Board's findings and conclusions regarding Patient Eleven because, according to Chavason, the Board cannot re-file an old complaint that has been previously dismissed and on which the statute of limitations has passed. Although the 2011 complaint was dismissed, Section 154.051(e) of the Texas Occupations Code authorizes the Board to reconsider previously investigated complaints and to take disciplinary action against a licensee based on a pattern of practice violating the Act or Board Rules. The evidence before us demonstrates such a pattern of practice.

And, even if the Board could not consider evidence regarding Patient Eleven, there is still substantial evidence to support the Board's order based on the evidence of Chavason's sexual boundary violations with eight other patients and two employees. *See Dyer*, 646 S.W.3d at 514 ("An improper, but superfluous, finding does not prejudice the substantial rights of the appellant.").

---

[2] Chavason's appellate brief is difficult to decipher. We construe Chavason's arguments to the extent they are understandable and not waived by inadequate briefing. *See* Tex. R. App. P. 38.1(i) (brief must contain clear and concise argument for contentions made with appropriate citations to authorities and to record).

## B. Due Process and Jurisdiction

Next, Chavason appears to make jurisdictional and due process challenges to the Board's order because, according to him, not all of the patients that were the subject of Staff's formal complaint filed with SOAH were included in his 2018 informal settlement conference. Chavason does not cite, and we are not aware of, any authority that an informal settlement conference is a jurisdictional prerequisite to Staff initiating a formal proceeding with SOAH. To the contrary, informal settlement proceedings are not required under the Administrative Procedure Act. *See* Tex. Gov't Code § 2001.056(2) ("Unless precluded by law, an informal disposition *may* be made of a contested case by: agreed settlement") (emphasis added). The Board's formal, sworn complaint filed with SOAH and served on Chavason detailing the allegations is sufficient to satisfy statutory jurisdictional and due process requirements. *See* Tex. Occ. Code § 164.004; *see also Leonard v. Tex. Med. Bd.*, 656 S.W.3d 456, 463 (Tex. App.—El Paso 2022, pet. denied) (concluding Board's sworn complaint detailing factual allegations and corresponding statutory violations sufficient to notify doctor of the nature of the complaint).

In addition, there is substantial evidence to support the revocation of Chavason's license based solely on evidence of his sexual boundary violations with two patients who were specifically identified in the 2018 informal settlement conference—Patients One and Two. In other words, even if Chavason's due process and jurisdictional arguments with regard to the other alleged misconduct were correct, we would still affirm.

## C. Weighing of Evidence

Lastly, Chavason makes several challenges to the weight and credibility of the patients' testimony and to the expert testimony offered by Staff. The ALJs, as

9

factfinders, determine the credibility of the witnesses and the weight of their testimony, and we may not substitute our judgment for those determinations. *See Dyer*, 646 S.W.3d at 514. Here, the ALJs found the patients' testimony credible. Specifically, the ALJs explained "[t]hat these similar episodes of conduct were independently reported over an eight-year period by multiple persons who had no connection with each other lends credence to their veracity." The ALJs also found Staff's expert to be credible based on her experience and extensive qualifications. It is not our role to second-guess these credibility determinations.

## CONCLUSION

Substantial evidence supports the administrative order revoking Chavason's license to practice medicine. Accordingly, we affirm.

/s/ Scott K. Field
Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.